Opinion or the Court, by
Ch. J. Bibb.
THE present cause comes before this court upon a writ of error to the decree of the Fayette circuit court, subsidiary to the former opinion of this court and the consequent decree, whereby the circuit court was directed to ascertain and restore the lost lines and corners of Beckley’s military survey.
That opinion and decree need not be herein recited; it will be found under the title of Beckley vs. Bryan and Ransdale, in the Printed Decisions p. 107.
The case was this: Beckley was complainant in chancery, claiming under a survey made in 1774 by virtue of a warrant for military services; his survey was confirmed by the statute of Virginia of 1779; but Bryan and Ransdale had obtained letters patent, containing a grant for a part of that survey, founded on posterior rights, but elder in date than the letters patent granting the land to Beckley. The military survey purported to be of 2,000 acres, but contained much surplus; the grant to Beckley described the land by reference to four courses and distances, and as connecting four corners, designated by marked trees. Two lines could not be traced by any visible marks, and two of the corners could not be found. The two corners found, were connected by the line between them, and another line *92 from one of those corners was visible; but the distance on that line was not terminated by the existence of the trees called for; it was in fact, and so named in the grant to Berkley, the longer line of an adjoining survey. So that the proposition formerly before this court, was, one line of the survey being ascertained and visible on the land by its terminating corner trees, and another line from one of those corners being ascertained as to the visible direction thereof, how shall the remaining two corners and lines be ascertained, restored and connected with those actually existing, so as to close survey by the courses and distances specified in the grant? The court, in the former opinion and decree, after reasoning upon the case and giving the directions to be observed by the inferior court, drew this corrollary: “From his northwestwardly corner, an elm, buckeye and ash, extend a line south, twenty degrees west, four hundred and sixty poles; from his eastwardly corner a white walnut and hoopwood, extend a line southwest, with a line styled in his grant, Wm. Preston’s, five hundred poles the extremities of those two extended lines will be the lost corners; and then connect those corners with a line running parallel to the line which connects the two first mentioned corners and the survey will be closed.”
Course and distance not to be departed from, but in cases of necessity.
Distances must first yield.
Allowances to be made for variation of the needle.
Unevenness of ground to be allowed for.
Mistake in distance originally committed in one line, could have affected only the opposite.
A mistake in one course, not to be presumed to have affected any other course.
Court bound to take notice that there is a magnetic variation from the true meridian.
Surveyors generally took their courses from the magnetic meridian.
Partial mistakes and inaccuracies never to vitiate a claim to land—Vide. Helm versus Small, Hard. 369 Morrison vs. Coghill’s legatees, Pr. Dec. 382.
*92 In attempting to carry that decree into execution, new difficulties have occurred in the court below, by a disclosure and development of facts (by the report of survey,) not before exhibited to this court. The most material facts newly disclosed, are these: That an actual mistake has happened in surveying the ground originally, by running the given line before mentioned, variant in fact from the course intended and certified in the original plat and certificate of survey; lastly, a greater excess of the given line beyond the distance specified therefor in the grant, than was represented formerly to this court. Before the former opinion of this court was given, the attention of the parties was attracted to objects of greater importance and of greater collision; upon going on the ground to prepare for executing that opinion, they were particularly directed to the points above stated. In adjudicating upon these subjects, it is distinctly to be understood, that we feel ourselves bound to adhere to the principles of the former decision, as well because we are fully persuaded *93 that they are correct in themselves, as because, if they were not orthodox, we have no lawful power to change or oppugn their application to this controversy. So far as they apply, we disclaim all and every authority to counteract them by any other. If the case in its new features, can be adjusted according to the principles of the former decision, taken in their true spirit and effect, then assuredly it must be so decided; where those principles fall short, others apposite and coadjuvant may be applied.
Horizontal measure to be attained, being the basis of the art of surveying.
The variation of the magnet since the original survey, is the allowance to be made.
Existing lines and corners to govern, however variant from the courses called for.
When visible and actual landmarks fail, resort is to be had to courses and distances.
Departure from distance not indulged, further than necessary.
The order of the courses & distances in certificate of survey, not to govern; it is no evidence that the same order was observed in executing the survey.
For restoring and renewing lost lines and corners, the following principles are contained in the former opinion, viz:
1st. “That nothing but necessity will justify a departure, either from course or distance.”
2d. “When a departure from either course or distance becomes necessary, that the distances ought to yield.”
3d. That in all cases where lost lines and corners are to be renewed, due allowances must be made for the variation of the magnetic needle from the true meridian.
4th. That proper allowances are to be made on each line for the unevenness of the ground over which it passes.
5th. That a mistake in distance committed in the original survey, on one line, could have affected the opposite line only, “and the presumption, in violation of the length of the other lost lines, cannot be carried farther.” From which may be deduced as a rational inference this 6th principle:
That a mistake in one course, evidenced by applying the patent to the ground, cannot be applied, or be made by presumption, to affect any other course named; because the courses were taken from the quartered compass, by the magnetic needle, and therefore a mistake in one course, does not necessarily or probably argue a mistake in running any other course.
Having thus premised, we come to the decree of the circuit court now complained of, as being contrary to the former decree of this court, and to the facts established by the surveyor’s report, upon which the said decree complained of was predicated.
The surveyor’s report, confirmed and decreed by the circuit court, has exhibited Beckley’s grant as bounded *94 and closed by the lines, courses, distances and corners following, and represented in the annexed diagram.
A complainant ought to recover only as far as his claim is reasonably certain.
Where it is uncertain whether land was or was not included originally, it ought not to be decreed.

A. white walnut and hoopwood, extant as expressed in the grant.
E. elm, buckeye and ash, extant, as likewise expressed.
Line A to B, south 43 degrees west, 500 poles.
Patent course and distance, named for that line, south 45 degrees west, 500 poles; corner called for at B, not extant.
B to C, north 69 1-2 west, 793 poles, being parallel to E A; course and distance expressed in the grant north 70 degrees west, 600 poles; corner named at C, not extant.
E to C, south 20 1-2 degrees west, at right angles to E A, which line the surveyor reports extended 460 poles only, falls seventeen poles short of intersecting the line B C.
The patent course and distance of E C, south 20 degrees west, 460 poles.
E to A, south 69 1-2 degrees east 984 poles; patent course and distance, south 70 degrees east 800 poles.
The errors assigned in this decree, are:
1st. “The inferior court has erred in not pursuing the decree of the court of appeals, which they have not done either in its spirit or in its letter.”
2d. “The inferior court erred in extending the line E C, beyond the distance prescribed for that line by the court of appeals.”
3d. “In not having allowed on the line (E C,) two degrees east, variation of the magnetic needle from the true meridian, that being the variation, or in not allowing some other variation to the east.”
*95 The variation of the magnetic meridian from the true meridian is recognized by the statutes, and by the former opinion of this court. That such variation was eastwardly of the true meridian at the time of the original survey, (in 1774,) that it had progressed eastwardly from that time until the time of making the survey preparatory to the decree how complained of, is one of those principles acknowledged by scientific men, which this court are bound to notice as relative to surveys, as much as they would be bound to notice the laws of gravitation, the descent of the waters, the diurnal revolution of the earth, or the change of seasons, in cases where they would apply. The particular degree of variation is difficult to be ascertained, and the method of ascertaining the variation to be allowed, was directed in the former opinion. From the acknowledged eastwardly variation at the time of the original survey, compared with the survey upon which the decree complained of is predicated, it is evident that the courses of Beckley’s military survey, as inserted in his grant, reciting the survey, were ascertained by the magnetic needle without regard to the true meridian; and such we believe was the prevailing practice of the country at the time of that survey. Perhaps not a single instance of a contrary practice has occurred in original surveys; at least, not an instance to the contrary has fallen under the notice of this court. Applying these observations to the case before us, it is apparent, that a gross error was committed in running the existing line of Beckley’s survey; for the line, as now reported, is south 69 1-2 degrees east, which would make the variation of the magnet westwardly instead of eastwardly. This mistake is farther proved, by adverting to the course of the line A B, as now reported; for it is only south 43 degrees west, instead of 45 degrees, as called for in the grant, that is to say, a variation of two degrees eastwardly, had intervened since 1774, which, it is believed, is about the average variation which has been found by those who have traced a considerable number of the surveys of 1774, and compared the variations generally in those surveys with the variations of the magnet about the year 1802. But whatever, might have been the variation in 1802, the time when the preparatory report was decreed upon by the court, whether two degrees eastwardly, or more or less, it is *96 evident that the circuit court erred in communicating to the line BC, the mistake, and westwardly variation of the existing line E.A, which is contrary to the first and sixth principles recited. For it is evident that the course of the line B C, has been made to depart from the course called for in the grant, and without necessity. Neither is this departure owing to a due allowance for the magnetic variation; but an undue and improper westwardly variation has been given to it, instead of an eastwardly. The circuit court have no doubt fallen into this error by attending to the direction, that this line should be parallel to the given or existing line, without examining that direction in conjunction with the principles of the decree; but nakedly and abstractedly, as well from those principles as from the additional light afforded by the report to which that direction has been applied. According to the grant, those lines appeared parallel; the court of appeals, not informed of the mistake committed in the existing line, directed the corresponding line to be renewed by running a parallel. But it is evident from the first, second, third and fifth principles extracted from that decree, that if the court had been informed of the mistake existing in that line, they could not have directed a parallel to it, without doing violence upon the very principles which they meant to preserve undefiled. The mind cannot for a moment assent to the proposition that by any rational construction of the former opinion, the court have intended, by introducing the word “parallel,” to produce a departure from the course of that line as expressed in the grant, after due allowance was made for the variation of the magnet. If any intention of departing from course, except from inevitable necessity, had been intended, the direction to connect the extremities of the two lines, the one of 500 poles, and the other of 460 poles, would have been nugatory; for a line run from those extremities to connect them, would have closed the survey. But so to connect those lines, did not comport with the views and intention of the court. Such a connection might have, and in fact would have, produced a departure from the patent course expressed for that line. For it is a truth, that the courses and distances named in the grant, without any variation, without mistake in any one distance, without any mistake in course, and *97 tried upon a perfect plane, will not close the survey. To guard against such an event, and against mistakes, the court, therefore, added that these extremities were to be connected by a line “ parallel to the line which connects the two first mentioned corners;” which provision was only tantamount to a direction to observe the patent course, for in the patent those lines were apparently parallel, each to the other. The opinion does not notice any mistake or departure in the given line. The very decretal order, declares that Beckley was to have a decree for so much of Bryan’s settlement survey, as should be found to be within Beckley’s military survey, when its lost lines and corners are run and fixed conformably to the exception contained in the aforegoing opinion;” and that exception expressly declares, that the two lost lines are to be run from the corners extant, and extended on the courses and to the distances called for in the plat and certificate of survey, making a proper allowance on each line for the unevenness of the ground over which it passes, “and also to preserve the course of the other lost line, as called for in the same.” Hence it may be affirmed with confidence, that a departure from course is repelled by every part of the former decision. The transfusing a mistake in one course into another course expressed in the patent, and thereby producing a departure from that other course, as is done by the decree complained of, was contrary to the manifest spirit and intention of the former decree of this court in the premises.
For the same reasons, the decree of the circuit court is erroneous, in establishing the line of 460 poles at right angles to the existing line; since thereby a similar departure will be produced from the corresponding course of that line named in the grant, and the mistake in the given line infused into the line of 460 poles; which supports also the first, as well as the third members of the assignment of error.
Upon the second member of the assignment, it must be remarked, that although the surveyor has reported that the line of 460 poles fell short by seventeen poles of intersecting the parallel line which he had run; yet by so reporting, he has thereby convicted his work of an error somewhere. That error may have been in some one or more of the courses, or in one or other of the distances, or in the allowances made for unevenness *98 of ground. Because if no such error had been committed, taking the courses and distances as reported by himself throughout, the survey will close by accurate delineation on a plane surface, or according to calculation by latitude and departure.
This is but another memento, that partial mistakes or inaccuracies should never be suffered to vitiate a claim to land; and induces a remark, that reasonable accuracy can never be attained in completing this business, without good instruments, careful chain-carriers, and such allowance, or other safeguard, for unevenness of surface as will be equivalent to horizontal admeasurement, upon which the art and rules of surveying are founded.
It farther appears that the decree of the court of appeals heretofore made in the premises, has not been carried into execution by the decree complained of, in this; that due allowance has not been made for the variation of the magnetic meridian. The circuit court have in fact communicated to every line to be renewed, the mistake which had been committed in the given line, and thus have closed the survey upon a mistake, and have thereby contravened the decree of this court, by departing from the courses of the grant in the lines to be renewed.
We would have it understood, that in alluding to courses of the grant as to the lost lines, we mean they shall be run with proper allowances for the variation of the magnet since the date of the original survey, to be ascertained in the mode pointed out in the former decree, so as to close the survey, and fix the lost lines and corners where they were originally, according to the survey recited in the grant. The ancient lines and corners now lost, are the objects to be attained by the best evidence the nature of the case now affords, to wit, the description as, certified by the surveyor and recited in the grant.
It is farther to be understood, as to those lines which are extant, or whose bearings are ascertained by existing corners, they are to govern, however variant from the courses called for. It is to the lost lines and corners that these rules are to be applied; where the ancient boundaries are visible and identified, resort to courses and to distances is unnecessary. Visible and actual boundaries, as rules to govern the property of *99 men, are far preferable to ideal lines and corners; but when these actual land-marks fail, we must resort to the next best evidences, courses and distances, as producing a reasonable degree of certainty, and a necessary security against the acts of the fraudulent and depraved, and against time and the elements.
It now appears that the courses and distances expressed in the grant, when extended from the remaining corners of this survey, will not close, as well on account of some inaccuracy in the original certificate of survey, when tested by calculation, or on a plane, even according to the courses and distances in the grant expressed, as on account of the particular mistake before mentioned as to the given line. The case is provided for in the last sentence of the sixth section of the former opinion as printed, (printed decisions, p. 110.) The length of one or the other of the lines of 500 poles or of 460 poles, that is to say of A B, or of E C, must be departed from, and then the length of the one which is made to yield must be determined by calculation. We say the one or the other, because there is no necessity for both to yield, and to make them both do so, would be a departure from the spirit of the first and fifth principles, and to the second case put, in the section just alluded to. A departure from distances even, ought not to be indulged farther than necessary. A departure in the distances of both lines, is not necessary; either lengthening the line of 460 poles, or shortening that of 500 poles, will do; and the section directs a lengthening or shortening; but not to do both, unless upon necessity. The former opinion excludes the idea of deciding the matter by going around from the beginning called for in the grant, in the progressive order of the courses and distances therein recited; because, by the fourth section of the opinion, it is clearly to be understood, that the order of the courses in the certificate of survey, is no evidence that the same order was observed in executing the survey. But there is a principle of equity which seems to be decisive on this subject; namely, that a complainant in equity ought not to have relief farther than his claim is reasonably certain. Now it is evident, that if from the extremity of the line of 460 poles (from C,) a line is extended the patent course to intersect the line of 500 poles (A B, shortened) and from the extremity (B,) of the line of 500 poles, *100 a line be extended the patent course to intersect the line 400 poles (E C,) extended the claim to all the land between those two lines is in dubio, that land may have been excluded or included by the grant. And this argument would apply also to an extension and diminution of the distances on the lines E C and A B in equal proportions. But as to all the lands which would be included by retaining the line of 460 poles in length, and reducing the line of 500 poles by calculation to close the survey, the grant would be certain in every part, and for that only the claim should be established.
It is, therefore, decreed and ordered, that the said decree of the circuit court be reversed and set aside, and the cause remanded, to have the former decree of this court carried into execution according to the principles thereof, in the said opinion contained, and as now explained in the aforegoing opinion; which is ordered to be certified.
And it is further decreed and ordered, that the defendant in error pay to the plaintiffs their costs in this behalf expended.